UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLARENCE GRIFFIN,

Petitioner,

v. Case No. 3:20-cv-1434-HES-JBT

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, et al.,

Respondents.

---

**ORDER**

**I. Status**

Petitioner Clarence Griffin, a former inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] Griffin proceeds on an Amended Petition (Doc. 4). In the Amended Petition, Griffin challenges a 2020 state court (Columbia County, Florida) judgment of conviction for attempted false imprisonment. He raises four grounds for relief. See Amended Petition at 5-11. Respondents submitted a Response in opposition to the Amended Petition (Response; Doc. 13). They also submitted exhibits. See Docs. 13-1 through 13-

[1] For all pleadings and exhibits filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

18. Griffin filed a brief in reply (Reply; Doc. 16) with exhibits (Docs. 16-1 through 16-4). This action is ripe for review.

## II. Relevant Factual and Procedural History

These facts are taken from the Anders[2] brief Griffin's appellate counsel filed on direct appeal:

> On the morning of August 6, 2019, Sharlene Thomas used her cell phone to call 911 and report she was being held against her will. She requested help—and gave the dispatcher a brief description of her car, her and [Griffin], and their current location outside a Dollar Store on Baya Drive in Lake City, Florida. A short time later, at approximately 9 a.m., Officer Ryan Collins spotted a vehicle fitting that description [gray Nissan Pathfinder] parked outside a S&S convenience store. Collins approached the vehicle and made contact with its occupants. At the time, [ ] Griffin had just positioned himself behind the steering wheel after returning to the car from the store. Ms. Thomas was in the back seat and holding an ice pack to her face. Collins could see the right side of her face and eye area was severely swollen and bruised. After Thomas indicated her injuries had been inflicted by [Griffin], he was taken into custody.
>
> At trial, Ms. Thomas testified [Griffin] was a person she had once dated. On August 5, 2019, they decided to go to Jacksonville in her car. While they were en route to Jacksonville from Baker County, he took control of her phone, looked at some messages, and began accusing her of having sex with 2 individuals. At Jacksonville, they spent a short time at a casino before heading toward home. Upon leaving the casino, Thomas was driving. It was her testimony that as they traveled between Duval and

[2] Anders v. California, 386 U.S. 738 (1967).

> Baker counties, [Griffin] continued to accuse her of having sex with others. When she denied it, he would then punch her with an open hand about her face, head, and stomach. He threatened and struck her repeatedly. At one time he put a box cutter to her neck and threatened to cut her throat. Eventually, he took over driving the car because Thomas was having trouble seeing due to swelling on the right side of her face. She testified she repeatedly begged him to let her go home but he refused because he felt the need to keep her hidden until she didn't look so beat up. At his insistence, she was required to relieve herself by the side of the road or in the bushes. She was also required to sit in the back seat of her vehicle where the windows were tinted darker than the front windows. Until such time as the police responded to her 911 call, she did not believe she was free to leave the confines of the car.
>
> After [Griffin] was taken into custody and Ms. Thomas was interviewed, officers retrieved a box cutter from underneath the driver's seat of her vehicle.

See Doc. 13-13 at 12-13 (record citations omitted).

On September 9, 2019, the State of Florida (State) charged Griffin by information with false imprisonment. See Doc. 13-2 at 1-2. At the conclusion of a trial, a jury found Griffin guilty of attempted false imprisonment, a lesser included offense. See Doc. 13-8. On February 12, 2020, the trial court sentenced Griffin to a term of imprisonment of forty-eight months to be followed by one year of community control. See Doc. 13-12.

Griffin appealed his conviction and sentence to the First District Court of Appeal (First DCA). His appellate counsel filed an *Anders* brief, see Doc.

13-13, and Griffin filed a pro se initial brief, see Doc. 13-15 at 1-12.[3] The First DCA per curiam affirmed Griffin's conviction and sentence on October 20, 2020, and issued the mandate on December 21, 2020. See Doc. 13-16 at 1, 9. Griffin filed the instant action under 28 U.S.C. § 2254 on December 21, 2020. See Doc. 1.

## III. One-Year Limitations Period

This action was timely filed within the one-year limitations period set forth in 28 U.S.C. § 2244.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at

[3] While his direct appeal was pending, Griffin also filed pro se petitions for writ of prohibition and writ of habeas corpus. See Doc. 13-17 at 1-6; Doc. 13-18 at 1-2. The First DCA dismissed both petitions. See Doc. 13-17 at 15; Doc. 13-18 at 3.

474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Griffin's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the

state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen,

> 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

**B. Exhaustion/Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C.

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747-748, 111 S. Ct. 2546; Sykes,[5] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-18, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence

[6] Murray v. Carrier, 477 U.S. 478 (1986).

> of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

**C. Ineffective Assistance of Trial Counsel**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's

> representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Mootness

A United States district court has jurisdiction to entertain a § 2254 petition only if the petitioner is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has interpreted the "in custody" requirement to mean "that the habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490-91 (1989). Here, Griffin satisfied the "in custody" requirement because he was in FDOC custody serving his sentence for the conviction at issue—attempted false imprisonment—at the time he filed his federal habeas petition. Griffin's sentence, however, has since expired. He was released from FDOC custody on December 28, 2022, and was scheduled to be released from community supervision on December 27, 2023.[7]

"[A] habeas petitioner who has been released from imprisonment subsequent to his filing a § 2254 petition must establish that his petition still

[7] See Corrections Offender Network, Florida Department of Corrections, available at https://fdc.myflorida.com/OffenderSearch/Search.aspx (last visited March 15, 2024).

presents a case or controversy under Article III, § 2, of the United States Constitution, and therefore is not moot." Mattern v. Sec'y, Dep't of Corr., 494 F.3d 1282, 1285 (11th Cir. 2007). Once a petitioner's sentence expires, "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." Spencer v. Kemna, 523 U.S. 1, 7 (1988). "Ultimately, the burden remains on the petitioner to establish that his case still presents a live 'case or controversy' by demonstrating that a collateral consequence of his imprisonment persists after his release." Djadju v. Vega, 32 F.4th 1102, 1107 (11th Cir. 2022). "In considering mootness, we look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued." Id. at 1106 (citing Dow Jones & Co. v. Kaye, 256 F.3d 1251, 1254 (11th Cir. 2001).

On February 22, 2024, the Court directed Griffin, if he intended to continue the prosecution of this case, to file a memorandum of law advising why this case is not moot given his release from custody. See Order (Doc. 31). On March 4, 2024, Griffin filed a memorandum in which he asserts that his 2020 conviction remains a "burden in [his] life" because he has encountered "problems getting certain jobs." See Doc. 32 at 3. He also asserts that his "wrongful conviction" may be used to enhance a future sentence now that he

has been arrested again and is awaiting trial.[8] Id. The Court finds the case is not moot and will proceed to consider the merits of the Amended Petition. See Jamerson v. Sec'y, Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) ("Completion of a criminal sentence does not render a petition for habeas relief moot, because the ongoing collateral consequences of a wrongful conviction, such as the possible enhancement of a later criminal sentence on the basis of the earlier wrongful conviction, satisfy the case-or-controversy jurisdictional requirement"); McCray v. Sec'y, Fla. Dep't of Corr., 2022 WL 3536719, at *1 (11th Cir. 2022) (petitioner's appeal of the denial of his § 2254 petition was not "rendered moot by his release from incarceration because he challenges the validity of his conviction, and thus we presume that he is subject to collateral legal consequences.").

**B. Merits**

**1. Ground One**

As Ground One, Griffin asserts his counsel rendered ineffective assistance and committed fundamental error when she failed to pursue a

[8] According to the Alachua County Sheriff's Office website, the Gainesville Police Department arrested Griffin on April 19, 2023. See https://asosite.alachuasheriff.org/ASOInmateLookup.aspx (last visited Mar. 15, 2024). Griffin is currently confined at the Alachua County Jail awaiting resolution of an aggravated battery charge. See State v. Griffin, No. 01-2023-CF-001221A (Fla. 8th Cir. Ct. April 19, 2023). The Court notes that in Griffin's pending criminal proceeding, the State has designated Griffin as a prison release reoffender and filed a notice of intent to seek enhanced penalties if Griffin is convicted. Id. (Notice filed Jan. 26, 2024).

motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4). See Amended Petition at 5.

To the extent Griffin asserts fundamental error in connection with his counsel's failure to file a Rule 3.190(c)(4) motion, his claim is unexhausted because he failed to raise it in his direct appeal. Since future attempts to exhaust the claim would be futile, it is procedurally defaulted.[9] Griffin has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, to the extent Griffin asserts a fundamental error claim in Ground One, it is due to be denied.

To the extent Griffin argues his counsel was ineffective for not pursuing a Rule 3.190(c)(4) motion, the record reflects that Griffin raised a substantially similar claim in his pro se brief on direct appeal. See Doc. 13-15 at 7-8. The First DCA affirmed Griffin's conviction and sentence without a written opinion. See Doc. 13-16 at 1. The Court addresses the claim under the deferential standard for federal court review of state court adjudications. In

---

[9] As more than two years have elapsed since judgment was entered, Griffin cannot present the claim in a Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. See Kimbrough v. Sec'y, Fla. Dep't of Corr., 809 F. App'x 684, 692 (11th Cir. 2020) (noting that a Rule 3.850 motion must be filed within two years of the criminal judgment "unless the motion alleges that the facts on which the claims for relief are predicated could not have been discovered earlier by the exercise of due diligence." (citing Fla. R. Crim. P. 3.850(b)(1)).

doing so, the Court notes that there is a strong presumption in favor of an attorney's competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

Here, the Court finds defense counsel acted within the wide range of reasonable professional assistance when she determined there was no basis to file a pretrial motion to dismiss. See Doc. 13-6 at 3-4. Rule 3.190(c)(4) permits a defendant to move to dismiss a charge when "[t]here are no

material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." Griffin's arguments, both in the state court proceedings and in his Amended Petition, plainly demonstrate the existence of material disputed facts. Griffin asserts the depositions of the victim and the arresting officers were contrary to the arrest report. Griffin also references an affidavit that he prepared and filed shortly after his arrest. In his affidavit, Griffin alleged facts that he argued supported a finding that he committed no crime in Columbia County. See Doc. 13-3 at 1-2. Griffin also argued in the state court proceedings that depositions had been "tampered with" and that the State's witnesses, including the victim, had "changed their story from what the arrest report says." Doc. 13-5 at 12-13. Thus, even if defense counsel had filed a Rule 3.190(c)(4) motion to dismiss, the trial court would have denied the motion. As such, defense counsel cannot be deemed ineffective for failing to file a meritless motion. See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (finding that counsel was not ineffective for failing to raise issues that lacked merit).

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Griffin's ineffective assistance claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the

facts given the evidence presented to the state court. Accordingly, Griffin is not entitled to federal habeas relief on Ground One.

### 2. Ground Two

As Ground Two, Griffin argues the trial court committed fundamental error when it failed to address his contention that the body camera footage "prove[d] no crime occured [sic] in Lake City, [Florida]." See Amended Petition at 7. Initially, the Court determines that Griffin has failed to present a federal claim in Ground Two. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (stating that "federal habeas corpus relief does not lie for errors of state law").

Even if Griffin presented a federal constitutional challenge in Ground Two, the claim is procedurally barred because Griffin did not present the federal nature of this claim to the state court. The record reflects that Griffin raised a substantially similar claim in his pro se brief on direct appeal. See Doc. 13-15 at 8. In his brief, Griffin framed his argument solely in terms of fundamental error, which is a question of state law. See Pinkney v. Sec'y, Dept. of Corr., 876 F.3d 1290, 1299 (11th Cir. 2017). Although Griffin referenced the Sixth Amendment in passing, he did not articulate and fairly present a federal constitutional claim. See Kelley v. Sec'y, Dept. of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004) (a petitioner cannot "scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly

defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."); French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1271 (11th Cir. 2015) (reference to the Sixth Amendment in a passing citation was insufficient to alert the state court to the presence of a federal claim). Therefore, to the extent Griffin now raises a federal claim, the Court finds he failed to fairly present a federal claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust this claim would be futile, the claim is procedurally defaulted. Griffin has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, the claim in Ground Two is due to be denied.

### 3. Ground Three

As Ground Three, Griffin argues the trial court committed fundamental error when it denied his motion for judgment of acquittal. See Amended Petition at 8. As in Ground Two, Griffin does not present a federal claim in Ground Three. A claim that does not allege a federal constitutional violation is not cognizable in a federal habeas proceeding. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Even if Griffin presented a federal constitutional challenge in Ground Three, the claim is unexhausted because Griffin did not present the federal

nature of his claim to the state court. The record reflects that Griffin raised a substantially similar claim in his pro se brief on direct appeal. See Doc. 13-15 at 9. Griffin did not present any federal constitutional grounds in support of this claim on direct appeal. Instead, he relied on the record evidence in arguing that the trial court fundamentally erred when it denied his motion for judgment of acquittal. As stated in Ground Two, fundamental error is a state law issue. See Pinkney, 876 F.3d at 1299. Therefore, even assuming Griffin now raises a federal claim, the Court finds he failed to fairly present a federal claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust this claim would be futile, the claim is procedurally defaulted. Griffin has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, the claim is procedurally barred.

Alternatively, even if the claim in Ground Three was properly before the Court, the claim lacks merit. "A judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party." See Criner v. State, 943 So. 2d 224, 225 (Fla. 1st DCA 2006). Here, the evidence supported the trial court's denial of Griffin's motion for judgment of acquittal. At trial, the victim testified that Griffin forced her to drive across multiple counties after they left a casino in

Jacksonville. See Doc. 13-7 at 33-38. He struck her multiple times on her head, face, neck, and stomach. Id. Griffin also made verbal threats and at one point, threatened the victim by holding a box cutter against her throat. Id. at 35-36. The victim testified Griffin forced her to keep the vehicle "in drive with [her] foot on the brake while he . . . punched" her. Id. at 37-38. Eventually, Griffin began driving because the victim could no longer see from her swollen right eye. Id. The victim testified that Griffin repeatedly refused to take her home and only let her out of the vehicle to relieve herself on the side of the road or in the bushes. Id. at 46-48, 50. Even after Griffin parked the vehicle and fell asleep, the victim testified she was was afraid to leave the vehicle because he woke up every time she moved. Id. at 50-52. Griffin also took the victim's cell phone; she testified she was only able to retrieve it the next morning after Griffin left the phone in the car when he went inside a store. Id. at 54-56. After the victim called 911, law enforcement officers arrived on the scene and found the victim in the backseat of the car. Id. at 57. In addition to the victim's testimony, the State also presented the arresting officers' testimony and physical evidence consisting of photographs of the victim's injuries, the box cutter, and a belt cam recording.

The foregoing evidence was sufficient to send the case to the jury. Although Griffin argues there was conflicting evidence, the existence of contradictory, conflicting testimony or evidence "does not warrant a judgment

of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury." Fitzpatrick v. State, 900 So. 2d 495, 508 (Fla. 2005). Accordingly, Griffin is not entitled to federal habeas relief on the claim raised in Ground Three.

**4. Ground Four**

As Ground Four, Griffin asserts his trial counsel was ineffective when she failed to impeach the State's witnesses regarding inconsistencies between their trial testimony, the arrest report, and their prior depositions. See Amended Petition at 10. Griffin maintains the State's witnesses should have been charged with perjury because they "recant[ed]" their stories at trial. Id. Griffin also asserts the trial court fundamentally erred when it overlooked the allegedly perjured testimony. Id. Griffin raised substantially similar arguments in his pro se brief on direct appeal. See Doc. 13-15 at 9-11.

Insofar as Griffin asserts a fundamental error claim in Ground Four, he failed to present the federal nature of this claim to the state court as he only addressed the claim in terms of state law. See Pinkney, 876 F.3d at 1299. Because Griffin failed to present the federal nature of this claim to the state court, the claim is procedurally barred on federal habeas review. Griffin fails to show cause or prejudice to excuse the bar. He also has not shown a fundamental miscarriage of justice. As such, his fundamental error claim in Ground Four is due to be denied.

As to Griffin's claim that his trial counsel was ineffective, the record reflects that he raised the claim in his pro se brief on direct appeal. See Doc. 13-15 at 9-11. The First DCA per curiam affirmed Griffin's judgment and sentence. See Doc. 13-16. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Thus, Griffin is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the state court's adjudication of the claim is not entitled to deference, Griffin's ineffectiveness claim is without merit because the record supports the state court's conclusion. Griffin's trial counsel extensively cross-examined the victim, see Doc. 13-7 at 60-68, and the arresting officer, id. at 92-96. During her closing argument, defense counsel asserted that the victim lied to officers in order to "set up" Griffin because she was jealous. Id. at 133, 136-39. Defense counsel also pointed out conflicts in the evidence presented at trial. Id. at 136-39. Griffin has failed to carry his burden of showing that his counsel's representation fell outside the range of reasonably professional assistance. Even assuming arguendo deficient

performance by defense counsel, Griffin has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Griffin claims she should have. As such, Griffin's ineffectiveness claim in Ground Four is denied.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1. The Amended Petition (Doc. 4) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Griffin appeals the denial of the Amended Petition, the Court denies a certificate of appealability.[10] Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Griffin "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of March, 2024.

**HARVEY E. SCHLESINGER**
United States District Judge

Jax-10 3/19
c: Clarence Griffin, #P80755
Counsel of Record